BERNARD GOULD, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Division A.

Opinion filed March 26, 1930.

*Price, Price, Kehoe & Kassewitz* and *S. Grover Morrow,*
for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *H. E. Carter,*
Assistant, for the State.

ELLIS, J.—Bernard Gould was admitted to practice law
in Florida and became a practicing attorney in this State
in July, 1926. As such he became an officer of the court
for the administration of justice and amenable to the rules
and discipline of the court in all matters of order or pro-
cedure not in conflict with the Constitution or laws of the
State. See Chapter 10175, Laws of Florida 1925.

Mr. Gould was disbarred from practicing as an attorney
and counsellor at law in any and all the courts of the
State of Florida by order of the Judge of the Circuit Court
for the Eleventh Judicial Circuit for Dade County on the

9th day of May, 1929. He took a writ of error to that order from this Court and seeks here a reversal of it. The procedure is provided by statute. No material change has been made in it since the enactment of Chapter 4379 Laws of 1895 which became Sections 2554-2559 Rev. Gen. Stats. 1920. See State ex rel. Kehoe v. McRae, 49 Fla. 389, 38 So. R. 605.

A disbarment proceeding against an attorney is not a criminal proceeding; no indictment or information is necessary; no punitive sentence can be imposed and a jury trial is not required, but to authorize disbarment not only the act charged but the bad or fraudulent motive must be proved by a preponderance of the evidence and the conclusions of fact arrived at by the lower court should not be reversed unless error is clear. See Zachary v. State, 53 Fla. 94, 43 So. R. 925; State ex rel. Fowler v. Finley, 30 Fla. 325, 11 So. R. 674; State ex rel. Rude. v. Young, 30 Fla. 85, 11 So. R. 514.

The court has over attorneys a jurisdiction which is to be exercised according to a standard of conscience and not according to technical rules. State v. Maxwell, 19 Fla. 31.

The charges against an attorney in disbarment proceedings, however, should be clear, specific and circumstantial and stated with great particularity. See State ex rel. Fowler v. Finley, *supra;* Zachary v. State, *supra.*

It follows, as stated in the Finley case, *supra,* that where an attorney has been disbarred for abstracting a subpoena from the files of a court record and was afterwards acquitted of the crime involved, in a proceeding by mandamus to reinstate him, which is the proper remedy, he must negative the presumption of professional misconduct which is not negatived by the acquittal on the criminal charge.

To reiterate the doctrine announced in the Maxwell case,

*supra,* the court exercises a jurisdiction over attorneys which is to be exercised according to law *and conscience* and not by any technical rules. Such was Lord Tenterden's thought expressed in Ex parte Bayley, 9 B. and C., 691, cited in the Maxwell case to which Mr. Justice Westcott added the following authorities: "Ex parte Brownsall, 2 Cow., 829; 1 Yerger, 231; Tom. Law Dic., 593; 22 Ark., 157; 36 N. Y., 651."

In the case of State v. Kirke, 12 Fla. 278, Mr. Justice WESTCOTT, speaking for the Court, reviewed the subject fully. There has been no departure in the decisions of this Court from the principles announced in the Kirke case, *supra.* It may be considered as established that the power to admit one to practice law is one thing but the power to disbar is another. Although it may rest within legislative power to prescribe the qualifications which one desiring to practice law shall possess before he shall be admitted, the power of the court to deal with the alleged misconduct of attorneys is most generally conceded. It is an inherent power which is vested in the court to control the conduct of its own affairs and to maintain its own dignity. In exercising the summary jurisdiction to disbar attorneys the object which the courts have in view is to remove from the profession a person whose misconduct has proved him unfit to be intrusted with the duties and responsibilities belonging to the office of an attorney. This power of the court, although not inherent in the sense that a court cannot exist without it and the legislature it has been held may limit the power, see In re Ebbs, 150 N. C. 44, 63 So. E. R. 190, 17 Ann. Cas. 592, 19 L. R. A. (N. S.) 892; In re Saddler, 35 Okla. 510, 130 Pac. R. 906, 44 L. R. A. (N. S.) 1195, grows out of the relation which exists between attorney and court, the former's obligation to State and client; they are officers of the court, licensed,

permitted, franchised to practice law to the end that justice may be efficiently administered. See Wernimont v. State ex rel. Little Rock Bar Assn., 101 Ark. 210, 142 So. W. R. 194, Ann Cas. 1913 D. 1156; Manning v. French, 149 Mass. 391, 21 N. E. R. 945, 4 L. R. A. 339; 2 R. C. L. p. 929.

The matter of admission to practice law may be assumed to be a subject for legislative regulation. The power did not exist in the courts at common law and did not come definitely into existence as a court function until the Statute of 4 Henry IV c 18. That statute, of course, became effective in this State when the Act of November, 1829, was adopted declaring the common law and statutes of England of a general nature down to July 4, 1776, to be in force in this State.

Whether the legislature may limit the court's power to punish attorneys for misbehavior in the practice of the profession is a matter of grave doubt although held by some courts to exist because the power, as said by the Supreme Court of the United States in the case of Ex parte Bradley, 7 Wall. 364, 19 L. Ed. 214, has been exercised and recognized ever since the organization of courts and the admission of attorneys to practice therein.

In the matter of admission to the bar for the practice of law the legislature has exercised its power by the enactment of Chapter 10175, supra. Under the provisions of that act the applicant for admission must first satisfy the Board of Law Examiners that he possesses the necessary qualifications as to moral character and standing before he is admitted to the examination to determine his further qualifications as to his legal knowledge or attainments. The fact that the Board of Law Examiners is required to pass its judgment upon the "moral character and standing" of an applicant does not preclude the court,

after a certificate to practice has been obtained by the applicant, from revoking the certificate, striking the name of the attorney from the rolls, disbarring him from practice because of conduct of which he was guilty before he passed the examinations and obtained a certificate to practice. This power must necessarily exist to enable the court to preserve its dignity and integrity and prevent the exercise of the privilege of practicing by one whose character and course of dealing renders him unfit to be intrusted with the privilege and to associate with the honorable and worthy members of the profession and to participate in the administration of justice. The power may be exercised if only upon the ground that a court of general jurisdiction may purge itself from a fraud committed upon the court by an officer thereof. The power is inherent in the court to remove any practitioner whose conduct tends to impede, obstruct or prevent the administration of law or destroy the confidence of the people in such administration. See Wernimont v. State ex rel. Little Rock Bar Assn., *supra;* Ingersol v. Coal Creek Coal Co., 117 Tenn. 263, 98 So. W. R. 178, 119 A. S. R. 1003, 10 Ann. Cas. 829, 9 L. R. A. (N. S.) 282.

Concealment by an applicant for admission to the bar of the fact that he has recently been convicted of a crime involving moral turpitude is a fraud upon the court which warrants his disbarment. People v. Gilmore, 214 Ill. 569, 73 N. E. R. 737, 69 L. R. A. 701.

Failure to disclose previous conviction of crime committed in another State although pardon had been obtained therefor warrants disbarment. Matter of Pritchett, 122 App. Div. 8, 106 N. Y. Supp. 847.

In People v. Propper, 220 Ill. 455, 77 N. E. R. 208, previous to his admission the attorney had been convicted of bastardy, although he was innocent he said and did not

appeal for lack of funds; had been convicted of sending obscene cards through the mail, although he had not been sentenced because as he alleged the judge was not satisfied with the evidence; that he had been guilty but not convicted of bigamy. It was held that he should be disbarred.

The rule is observed in Pennsylvania. In the case of In re O'Grady, 4 W. N. C. (Pa.) 199, it was held that he should be disbarred because he had concealed from the court admitting him the fact that he had been refused admission by the Common Pleas court.

The same rule obtains in Idaho. See In re Bradley, 14 Idaho 784, 96 Pac. R. 208. In New York see Matter of Leonard, 127 App. Div. 655. In re Woodward, 27 Mont. 355, 71 Pac. R. 161. It was the rule in England, see Ex parte Hill, 2 W. Bl. (Eng.) 990. See In re Mosher, 24 Okla. 61, 102 Pac. R. 705, 20 Ann. Cas. 209.

In many states fraud in procuring admission to the bar is a statutory ground for disbarment. It is not made a statutory ground in this State although Chapter 4379 Acts of 1895, Sec. 2554 Rev. Gen. Stats. 1920, being merely declaratory of the court's inherent power in the matter of disbarment may not be considered as an attempt to limit the power to acts committed by an attorney as such.

Good character in the members of the bar is essential to the preservation of the integrity of the courts whose judges are recruited from the bar. The duty and power of the court to guard its portals against intrusion by men and women who are mentally and morally dishonest, unfit on account of bad character evidenced by their course of conduct, to participate in the administration of law would seem to be unquestioned as a matter of presentation of judicial dignity and integrity.

We are of the opinion that a motion for disbarment directed against a member of the bar which charges an

act of dishonesty, a breach of good faith in business relations, committed a short while before the applicant's admission to the bar and reasonably early after such admission is not demurrable. We think, however, that to justify disbarment the alleged transaction referred to in the motion should be of such character as to show not merely a civil liability or duty of accused to account to his associates in the transaction but should clearly charge an act of bad faith so corrupt and false as to constitute a criminal act or so unprincipled and disgraceful as to be reprehensible in a high degree. The measure of good faith which an attorney is required to exercise in all his dealings with his client is a much higher standard than is required in business dealings where the parties trade at ''arms' length'' and engage figuratively in a battle of wits to outmaneuver or out-trade each other, where advantage is sought and attained at the expense of candor, ingenousness and often times truth.

A transaction which might pass in some business circles without much if any protest, if not actual approval, might constitute sufficient ground for disbarment of an attorney if he engaged in and profited by it at the expense of his client.

In the case at bar the respondent, Mr. Bernard Gould, was charged with a lack of good faith, a breach of trust in dealing with a ''co-owner'' of real estate prior to the respondent's admission to the bar. It is alleged that the relations of the parties were such that the ''co-owner'' was entitled to an accounting from Mr. Gould for the ''co-owner's'' interest in the proceeds of the sale of certain securities consisting of notes and mortgages which were sold by Gould without the knowledge or consent of his associate to whom he failed to account and to whom he equivocated in order to avoid such accounting until

confronted by his associate with evidence of his deception. Then Gould admitted that he had sold the notes because he "needed the money." Much of the motion consists of conclusions as to "fraud," "deception" and "admission" of "unethical conduct" but it lacks clearness of allegation as to the precise act and precise relation of the parties and corrupt motive of the respondent.

To say that one is a "co-owner" with another of "certain real estate or equities in real estate notes and mortgages" as to which one is accountable to such other is not to be very definite in the statement of either the character or quantity of such other's interest. While the jurisdiction of the court over attorneys is to be exercised according to a standard of conscience and not according to technical rules, State v. Maxwell, *supra,* the allegation as well as the proof required to justify the disbarment of an attorney for corruption and certainly for a corrupt act before his admission to the bar must be clear as to the act and the corrupt motive. State v. Young, *supra.*

So far as the allegations in the first specification show to the contrary the parties may have been engaged in a joint adventure or informal partnership in transactions to extend over a period of time and to be directed and controlled by the respondent as the necessities or emergencies required. The evidence shows such to have been the fact. The respondent was engaged in real estate speculations. His activities were confined not to one transaction nor limited to any definite period. He would close one transaction and scarcely before payments upon it became due the securities might be transferred or hypothecated to furnish the consideration for another so-called "deal" of larger proportions. The respondent's activities were such that from small beginnings he soon became involved in transactions the sale value or "inflated prices" of the

properties involved mounted to millions. Silver's cupidity was aroused and he sought the aid of his kinsman, the respondent, in the effort to increase his own wealth through the management and abilities of the respondent.

It is not known, of course, what would have happened if those fevered times had continued and the respondent could have withdrawn from them with his profits. Silver may have been satisfied with his profits or might have claimed more than his share and sought an accounting to obtain it. But trading ceased, values deflated, commercial paper went to protest, paper profits vanished and men wrote off their losses and tried to forget. Silver, it seems, instead of abiding his loss sought the aid of the courts through criminal process to compel the respondent to suffer his ''co-owner's'' loss as well as his own.

The evidence so appears to us. In any case, we are unable to say that upon the first specification both as to allegation and proof that the judge's findings were without error. We think the charge was insufficient and the evidence wholly inadequate to show such corrupt motive in the respondent's dealing with Silver as to warrant the former's disbarment.

There are three other specifications in the motion which deal with the respondent's failure to be diligent as an attorney in the prosecution of claims placed in his hands by a client by which the client lost the benefits which should have been secured to him under the statutory lien laws.

No corruption is charged, but laziness or inattention to business intrusted to his care, and prevarication to excuse it, forms the basis upon which disbarment was sought on those specifications. The evidence we think was wholly insufficient to establish any dishonorable or corrupt motive

on the respondent's part even if the charge was sufficient to put him to trial.

Malpractice is a broad term. It embraces every character of unprofessional conduct from a petty trespass to a high crime. It may be either wilful, negligent or ignorant. It would be a severe remedy to disbar an attorney for carelessness, inattention to duty, ignorance of his client's rights and the remedies to enforce them, or even for an occasional equivocation in an effort to appear better informed and more alert than his client suspects, as it would be a precarious thing to accept the version which a disappointed and covetous client might given of his attorney's knowledge, activity and character in the management of a case resulting in failure.

We think that the order of disbarment was erroneous and should be reversed. It is so ordered.

TERRELL, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.