85 So.2d 232 (1956)
STATE of Florida ex rel. The FLORIDA BAR, Complainant,
v.
W. Cecil GRANT, Respondent.
Supreme Court of Florida. En Banc.
February 10, 1956.
*233 Chester Bedell, Jacksonville, for The Florida Bar, complainant.
Raymond & Wilson, Horn & Ossinsky, Adams & Judge and Charles E. Booth, Daytona Beach, for respondent.
STANLY, Associate Justice.
The question submitted is whether the amended complaint filed by the Florida Bar against one of its members for alleged professional misconduct is sufficient to withstand the attack levelled against it by the respondent. Paragraph 3 of such complaint alleges the acts of misconduct charged against the accused. Briefly stated, subparagraph (a) is a general charge which says in substance that respondent specialized in handling divorces and during the period May 2, 1953, to December 2, 1953, filed in excess of 250 divorce suits, some of which originated outside of the State of Florida; that "in many instances" the testimony given and procured by respondent's clients to establish jurisdictional residence of 90 days was false and untrue and was known, or should have been known, by respondent to be false and untrue. Respondent's motion to strike that portion of the complaint should be granted for lack of definiteness in failing to place respondent on notice of the specific acts of alleged misconduct which he will be called upon to defend against. State ex rel. Fowler v. Finley, 30 Fla. 302, 11 So. 500; Gould v. State, 99 Fla. 662, 127 So. 309, 69 A.L.R. 699. See also Vol. 3 Florida Jurisprudence, Sec. 108, page 435.
However such criticism of lack of definiteness does not apply to the remaining subparagraphs (b), (c) and (d) of paragraph 3 of the amended complaint. Each of these subparagraphs specifically charges the respondent with procuring in the courts of this state through fraud, deceit and misrepresentation a final decree of divorce for a client, particularly identified as to name of parties, times and courts wherein maintained. In each of these 3 instances it is alleged that respondent filed a bill of complaint alleging his respective client to have been a bona fide resident of this state continuously for more than 90 days prior to filing thereof, and that said allegation was false and untrue, and at such time was known by respondent to be false and untrue; and that he thereafter prosecuted said cases through the customary stages ending in entry of a final decree of divorce for his client with personal knowledge, at all times and stages of the cases, that the testimony introduced and representations *234 made to the court concerning residence of the respective client involved were false and untrue. Those facts are set forth in clear, direct and unambiguous language and with great particularity and exactness. The language employed not only places the respondent squarely on notice of the misconduct charged against him, but also pin points each specific act, with accompanying dates, names and circumstances, alleged to have been wrongfully engaged in by the respondent, and leaves nothing to surmise or conjecture concerning the accusation which he is called upon to defend. The conduct charged is in shocking contrast to the standards approved by this court, and if capable of being proved by competent evidence would constitute a flagrant violation of the code of ethics for which appropriate disciplinary action would be fully warranted. A few of the cases involving charges of similar misconduct wherein this court approved disciplinary action against the offending attorney are: In re Harrell, 156 Fla. 327, 23 So.2d 92; In re Stoller, 154 Fla. 864, 19 So.2d 312, 313; Weinstein v. State, 151 Fla. 287, 9 So.2d 710.
The respondent has filed a verified as well as unverified motion to dismiss and an answer, all addressed to the amended complaint (which for the remainder of this opinion will be treated as though subparagraph 3(a) has been deleted therefrom) by which he contends such complaint, and the proceedings leading up to its filing, are defective on account of the following: (1) the alleged charges of misconduct were not initiated in the form of an affidavit, (2) he has not yet been confronted by the complaining witnesses, and (3) he has been deprived of his right to cross-examine the witnesses. The arguments advanced in support of those points appear to overlook and disregard the particular portion of Amended Article XI of the Integration Rule, 31 F.S.A., under which this proceeding is maintained.
Amended Article XI of the Integration Rule, which became effective July 1, 1951, provides two separate or alternate methods whereby the Board of Governors, or a Grievance Committee of the Florida Bar, may properly invoke disciplinary proceedings against a member of that bar for alleged professional misconduct. The first method outlined in the rule contemplates that the power to invoke its investigative authority would be exercised only after charges of professional misconduct may be brought to their attention in the form of an affidavit. So far as this controversy is concerned it may be conceded that an essential preliminary requirement to a proper investigation by the board or committee under such first method is that the charges to be so investigated must be presented under oath by affidavit or deposition by some person desiring to initiate the charge. But that is not the exclusive method authorized by said Article XI. Other parts of said Article XI, which were invoked by the Florida Bar in this case, provide for an entirely separate or alternate method, as follows:
"The Board of Governors and the Grievance Committees may initiate such investigations at such time and place as deemed by them advisable; * * *."
That last quoted portion of the rule prescribing the second or alternate method for exercising such investigative authority conspicuously omits, and refrains from including, any provision whereby a charge under oath by affidavit or deposition is contemplated or required as an indispensable prerequisite thereto.
The word "initiate" is defined by Webster to mean "to introduce by a first act; to make a beginning with; to set afoot; to originate; commence; begin". Hence the rule unquestionably authorizes the Board of Governors and the Grievance Committee to "introduce * * * set afoot, originate, commence (or) begin" such investigations at such time and place as deemed by them advisable. Furthermore the plain, simple and clear statement that such board or committee "may initiate such investigations at such time and place as deemed by them advisable" is so entirely foreign and contradictory to the thought *235 of other conditional preliminaries as to effectively exclude any inference that such board or committee must numb themselves into acting like the three little monkeys who "see no evil, hear no evil, and speak no evil" unless and until some other person with less reason or obligation to speak out, (and more often than not  possessed of less knowledge on the subject) is shocked out of his human state of reluctance into presenting them with a formal affidavit or deposition charging a lawyer (schooled in the business or prosecuting libel and slander suits) with professional misconduct. It is convincingly clear that the rule itself respecting the second or alternate method of exercising such investigative authority (which is the portion of the rule under which the Florida Bar acted in this case) affords no support for respondent's contention that complainant's jurisdiction to investigate his alleged misconduct was dependent upon charges being first made against him in the form of an affidavit. However respondent argues that the rulings in the cases of Hogan v. State, 89 Fla. 388, 104 So. 598 and State ex rel. Wolfe v. Kirke, 12 Fla. 278, support his contention. But that argument cannot be reconciled with the more recent case of Richardson v. State, 141 Fla. 218, 192 So. 876, 877, where this Court's latest expression on that subject states:
"* * * we cannot agree with State ex rel. Wolfe v. Kirke, supra, or with the dicta in Hogan v. State, supra, that a complaint against an attorney ought not to be received unless made on oath."
In that case an attorney who had been suspended from the practice of law pursuant to statutory proceedings before a Circuit Judge sought a reversal of the judgment on the ground was without authority to receive and act upon a motion to disbar made pursuant to statute when said motion is not sworn to. But there the court said:
"The absence of an oath of the State attorney to a motion to disbar made under the statute is not ground for reversal."
In so holding the court reasoned as follows:
"There is no statutory authority which compels a State attorney to file his motion to disbar under oath. In Gould v. State, 99 Fla. 662, 127 So. 309, text page 311 [69 A.L.R. 699], it is said, `the court exercises a jurisdiction over attorneys which is to be exercised according to law and conscience, and not by any technical rules'. While it was formerly the practice to require all pleadings of any kind whatever, both in equity and in law, to be under oath, the old technicalities of pleading are being done away with, and rightly so, including the elimination of the oath in most actions."
This Court's above quoted refusal to adhere to the earlier statements made in the above cited Hogan and Kirke cases to the effect that a "complaint against an attorney ought not to be received unless made on oath" was sound. Of such statement the Court said that its appearance in the Hogan case "* * * was mere dicta"; and likewise a review of the case of State ex rel. Wolfe v. Kirke, supra, reveals that its appearance in that case was also dicta because that case was actually reversed upon the ground that the lower court "* * * has decided erroneously on the testimony * * *." Thus it appears the main support for respondent's argument stems from dicta appearing in two cases which dicta was expressly overruled in the later case of Richardson v. State, supra.
Safeguards to assure against an accused party being subjected to trial without appropriate determination that probable cause exists are included in that portion of the rule in question which provides:
"The Board of Governors and the Grievance Committees shall in every instance give the accused attorney an opportunity to explain or refute the charges made against him. Unless the Grievance Committee finds that there is no reasonable or probable ground to believe that the accused attorney is guilty of professional misconduct, it shall file with the Board of *236 Governors a report, with necessary supporting papers, containing such Grievance Committee's findings and recommendations as to each such charge. Upon receiving the report of a Grievance Committee, the Board of Governors may direct that a further investigation be made by such Grievance Committee or by the Board, or that no complaint be filed. In every instance wherein the Board of Governors receives a report of a Grievance Committee recommending any action against any accused attorney, the Board of Governors shall give notice to and afford such accused attorney a reasonable opportunity for a private hearing upon the charges, with the opportunity to the accused attorney to be heard and to present testimony and evidence. If the Board of Governors finds from the report of a Grievance Committee, or from any investigation made by or under the direction of the Board, that there is reasonable ground to believe that the accused attorney has been guilty of professional misconduct, it shall cause a complaint in writing to be prepared by such Grievance Committee or by an active member of the Bar. The complaint shall set forth the specific facts constituting the alleged misconduct, and a copy thereof shall be served upon the accused attorney personally or by registered mail."
Before a formal complaint can be filed as here the accused is in every instance first given "opportunity to explain or refute the charges made against him" and later given another "opportunity * * * to be heard and to present testimony and evidence." The complaint filed against respondent alleges that "all conditions prerequisite to the filing of same, required by said Rules, have been fulfilled". And the complaint is signed by an able and respected member of the bar as attorney for the Florida Bar, which according to rule 1.5 Florida Rules of Civil Procedure, 30 F.S.A., "shall constitute a certificate by him that he has read the pleadings; that to the best of his knowledge, information, and belief there is good ground to support it".
In Lambdin v. State, 150 Fla. 814, 9 So.2d 192, this Court held:
"It appears that the complaint which is the gist of the motion to disbar was filed by the Grievance Committee of the St. Petersburg Bar Association. It was addressed to one of the Circuit Judges under oath and stated that the contents `are true to the best of affiant's knowledge and belief'. On this point, the only requirement of the statute is that the motion to disbar be in writing and in the name of the State. No particular form of verification is required. Under such circumstances, we have held that it does not have to be under oath. Richardson v. State, 141 Fla. 218, 192 So. 876. In Worthen v. State ex rel. Verner, 189 Ala. 395, 66 So. 686, the Supreme Court of Alabama has approved the like rule affecting a statute almost identical with ours. Other decisions are to like effect."
Although respondent's verified motion to dismiss admits that prior to the institution of these proceedings an appropriate Grievance Committee investigated alleged charges of misconduct made against him and in such connection afforded him opportunity to explain or refute such charges; and also admits that thereafter such Grievance Committee made its findings and recommendations to the Board of Governors of the Florida Bar, who thereafter notified respondent and afforded him opportunity for private hearing before it, yet he contends that the proceeding must be ruled out as a nullity because the alleged charges of misconduct were not made in the first instance in the form of an affidavit. It should be borne in mind that the preliminary investigative procedures authorized by the rule are for the sole purpose of determining whether "there is reasonable ground to believe that the accused attorney has been guilty of professional misconduct". Obviously no "trial" of the charges is attempted during the mentioned investigative *237 stages and none is contemplated unless and until it is determined by this Court that a proper complaint has been filed.
It is nowhere suggested by respondent that he was not fully informed of the facts forming the basis of the complaint in advance of the opportunities afforded him "to explain or refute the charges", or "for a private hearing upon the charges, with the opportunity * * * to be heard and to present testimony and evidence", or that such facts as were developed during the investigation were not carefully and rationally analyzed by both the Grievance Committee and Board of Governors and successively found to constitute probable cause for the filing of the complaint. From aught that appears from the record the actions of the committee and board were determined upon only after hearing respondent's explanation and considering any and all sworn testimony and evidence as was presented on behalf of either side of the matter. From a practical standpoint it is difficult to conceive how the course of the actual investigation, or any rights of the respondent, could have been materially affected in this case by reason of the fact that it has not been affirmatively shown that the Grievance Committee actually received an affidavit concerning the alleged misconduct prior to embarking upon the investigation.
Certainly it is serious business to charge an attorney with professional misconduct, but nevertheless wisdom dictates, and no one questions, the necessity for reasonable and practical diciplinary rules to protect the court itself and relieve the public against transgressions from those who may succumb to mischievous temptations created by the cloak of trust and confidence reposed in members of the honorable profession. If the courts and the bar are to retain the confidence and respect of the public the machinery created to assure adherence to the standards proclaimed by the decisions of this court must not be stalled by unsound arguments claiming denial of due process of law. The right to a fair trial vests equally as much in the complainant as in the respondent.
In Lambdin v. State, supra, this court said:
"The administration of justice is a service rendered by the State to the public and exacts of those who engage in it the highest degree of confidence and good faith. No service furnished by the State more vitally affects the public. We practice law by grace, not by right. The privilege to practice law is in no sense proprietary. The State may grant it or refuse it, or it may withdraw it from those who abuse it."
To the same effect see Holland v. Flournoy, 142 Fla. 459, 195 So. 138. Respondent remains submissive and amenable to the Integration Rule and such disciplinary procedures provided for therein as are not in conflict with the constitution or laws of the state. The Florida Bar, upon being alerted to the alleged corrupt practices which became the subject of the formal charges made in paragraph 3 (b), (c) and (d) of the amended complaint was authorized, both by the Integration Rule and applicable decisions referred to above, to initiate the investigation conducted in this case irrespective of whether the conduct complained of was set down in affidavit form. The fact that another method of procedure was available to the Florida Bar did not exclude it from using the one it chose.
Respondent also complains that he has not yet been confronted by the complaining witnesses, and that he has been deprived of his right to examine and cross-examine such witnesses. He points to no requirement of the Integration Rule in support thereof. In the absence of any such requirement in the rule it appears that the general rule as stated in 73 C.J.S., Public Administrative Bodies and Procedure, § 133, p. 459, should govern. The pertinent portion of that rule is:
"The constitutional requirement of a hearing does not require a hearing at the initial stage, or at any particular *238 point, or at more than one point in an administrative proceeding as long as the requisite hearing is held before the final order becomes effective. Where opportunity for a full and adequate hearing is available within the administrative process, no fundamental rights are transgressed when the hearing action of the administrative agency. Where there is provision for a hearing before the administrative body before it acts on recommendations, a hearing before the recommending body is not required. * * *"
A preliminary affidavit could not have satisfied the respondent's desire for confrontation and cross examination of the witnesses. As yet respondent has not been placed on trial. Moreover, he will not be tried  in fact cannot be tried until this court appoints a referee to conduct the trial. When a trial ensues it will be incumbent upon the complainant to establish its allegations by sworn testimony of witnesses and other competent evidence. During such trial the respondent will then be entitled to confront the witnesses and cross-examine them. Until then the insistence upon such rights are prematurely asserted.
Respondent's motion to strike subparagraph (a) of paragraph 3 of the amended complaint is granted, and the respondent's verified and unverified motions to dismiss the amended complaint as it would stand after the deletion of said subparagraph (a) is denied. Respondent having filed answer to such amended complaint a referee to conduct a hearing upon the issues raised thereunder, will be forthwith appointed by the Chief Justice.
DREW, C.J., and THOMAS, HOBSON and THORNAL, JJ., concur.
ROBERTS, J., dissents.
TERRELL, J., heard the argument but did not participate in opinion or judgment.