548 So.2d 1107 (1989)
THE FLORIDA BAR, Complainant,
v.
James L. DIAMOND, Respondent.
No. 71347.
Supreme Court of Florida.
September 14, 1989.
John F. Harkness, Jr., Executive Director, and John T. Berry, Staff Counsel, Tallahassee, and Randi Klayman Lazarus, Bar Counsel, Miami, for complainant.
Nicholas R. Friedman of Friedman, Baur, Miller & Webner, P.A., Miami, and Alan C. Sundberg of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Co-Counsel, Tallahassee, for respondent.
PER CURIAM.
This disciplinary proceeding is before us on complaint of The Florida Bar and a referee's report. The Bar has petitioned for review of the referee's recommended discipline. We have jurisdiction pursuant to article V, section 15, Florida Constitution.
The parties do not dispute the findings of fact. The Bar instituted proceedings *1108 against respondent after a federal court jury found him guilty of six counts of mail and wire fraud. The case proceeded to a referee, who found respondent guilty of all charges against him: rule 4-8.4(a) [violation of the rules of professional conduct], rule 4-8.4(b) [commission of a criminal act], and rule 4-8.4(c) [engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation], of the Rules Regulating The Florida Bar.
The referee recommended that respondent be suspended from the practice of law for three years and that the period of suspension should begin November 25, 1986. (This Court suspended Diamond effective June 5, 1985, after his conviction, and he has remained suspended since that time). In rejecting the Bar's argument that respondent should be disbarred, the referee found that Diamond "has shown the ability to be rehabilitated," and concluded that "no further discipline to prevent his future application for readmission is or should be required." Specifically, the referee found mitigation as follows:
A. The age of Respondent, his years of service to his clients, his community, his Bar and his country.
B. The testimony of leaders members of The Florida Bar and the community with respect to Respondent's integrity, trustworthiness and ability to be rehabilitated.
C. The testimony of the Honorable Edward C. Davis [the judge who tried Diamond's case] that notwithstanding the verdict, he never saw Mr. Diamond as an active participant in an act of fraud, and the fact that Mr. Diamond has completed all the requirements of his incarceration and has already had his civil rights restored to him. See The Florida Bar v. Thomson, 271 So.2d 758, 761 (Fla. 1972); Gould v. State, [99 Fla. 662], 127 So. 309 (Fla. 1930).
D. The other personal hardships incurred by Respondent, including his loss of position in his law firm, loss of professional esteem and acute personal embarrassment, including his understandable reluctance to accept public service positions offered to him in order to save the public officials or institutions the embarrassment of having a suspended attorney appointed to various types of volunteer positions.
E. The Respondent's witnesses, including a past president of The Florida Bar, a past Mayor of Miami Beach, and persons who have dealt with him in business, the law, and public service, all testified in support of he Respondent's good reputation in the community, notwithstanding the charges against him as to his good character and as to their belief that he is not in need of any further discipline, and is rehabilitatable if not already rehabilitated, and that he was not motivated out of any corrupt or vile motive. See Thomson and Gould, supra.
F. The unblemished record of Respondent, exclusive of these charges.
G. That the stigma of disbarment is a burden on Respondent which is not necessary to encourage reformation or rehabilitation of Respondent and would not result in any greater protection of the public, than would a threeyear suspension. The Florida Bar v. Blessing, 440 So.2d 1275, 1277 (Fla. 1983).
H. Finally, that a review of "Florida's Standards for Imposing Lawyer Sanctions" Section 9.3, at pp. 73-74, has shown the presence of many mitigating factors, with which the referee agrees.
The Bar raises two arguments. First, it again presses its argument that Diamond should be disbarred. The Bar says the conduct that led to the felony convictions in this case was particularly egregious because Diamond utilized his talents as an attorney to participate in consumer fraud on a mass scale. Were this conduct not extensively mitigated we would agree. But we cannot ignore the abundant character testimony from prominent, sober, and reliable witnesses. We find especially telling the fact that Judge Davis, who sat on Diamond's case, testified in Diamond's behalf.
The Bar's other argument involves the referee's reliance on Judge Davis's testimony. The Bar contends that since the jury *1109 found Diamond guilty it must have rejected his defenses; the referee's mention of Judge Davis's testimony, therefore, was an improper reweighing of Diamond's guilt.
The Bar might have a point if the referee had found Diamond not guilty of one of the charges based upon Judge Davis's testimony. However, in determining the appropriate sanction a judge may consider the relative culpability of the accused. Diamond was one of twenty-six defendants named in a forty-nine count indictment, and we see nothing improper in the referee's relying on the judge who heard the case to determine the degree of culpability. Judge Davis's testimony gives credence to Diamond's argument that he was ignorant of many of the unlawful activities going on in the companies of which he was president.[*]
Finding no error in the referee's report, we approve it. James L. Diamond is hereby suspended from the practice of law for three years, that period beginning on November 25, 1986. Upon application to be readmitted, he will have to demonstrate rehabilitation. Diamond is ordered to pay the costs of this proceeding. Judgment is entered against him for $955.20, for which sum let execution issue.
It is so ordered.
OVERTON, McDONALD, BARKETT and GRIMES, JJ., concur.
EHRLICH, C.J., dissents as to discipline with an opinion, in which SHAW and KOGAN, JJ., concur.
EHRLICH, Chief Justice, dissenting as to discipline.
The referee recommended a three-year suspension. The Florida Bar has asked that respondent be disbarred. I agree with the Bar's position and would disbar respondent for a period of five years from the effective date of his felony suspension.
Respondent was convicted by a federal court jury of six counts of mail and wire fraud, which are felonies under federal law. I view these offenses as very serious and believe that disbarment is the appropriate disciplinary action for the conduct at issue. The majority notes that the referee considered in mitigation the testimony of leading members of The Florida Bar and the community with respect to respondent's good reputation, notwithstanding the charges against him. Such testimony may be relevant upon application for readmission. It does not, however, establish any mitigating circumstance with regard to the crimes of which respondent was convicted. Likewise, the referee's findings in paragraph D, relating to personal hardships such as loss of professional esteem and personal embarrassment, are not factors in mitigation but merely the consequences of respondent's actions.
I would make his disbarment retroactive to the date of his felony suspension, June 5, 1985. I recognize that this adds very little additional time to the period during which respondent will not be permitted to practice. However, as I have previously stated:
The difference is this, and in my opinion it is major: In disbarment the offender has to apply for readmission and must establish to the satisfaction of the Florida Board of Bar Examiners that he is rehabilitated and must establish legal competence by successfully taking The Florida Bar examination. Perhaps of more importance is the opprobrium of disbarment which is a cogent factor in the matter of deterrence.
Respondent has been convicted of [felonies] and has served time in prison. Anything less than disbarment can be looked upon as an abdication by this Court of its responsibilities in the supervision of an arm of this Court, The Florida Bar.
Florida Bar v. Chosid, 500 So.2d 150, 152 (Fla. 1987) (Ehrlich, J., dissenting).
*1110 I respectfully dissent as to the discipline imposed.
SHAW and KOGAN, JJ., concur.
NOTES
[*] According to Diamond he took over presidency of the companies when the owner, a client, became unable to handle daily business affairs due to his wife's grave illness. He maintained that he did not know that salesmen for the company were not following the government-approved scripts for soliciting clients to use the company's services in acquiring oil and gas leases.