JENNIE R. GALLEMORE, *Appellant*, v. JOHN R. GALLEMORE, *Appellee.*

Division B.

Opinion Filed August 1, 1927.

Petition for Rehearing Denied October 13, 1927.

*Olliphant & Olliphant,* and *Daniel Riley McMaster,* Attorneys for Appellant;

*C. M. Wiggins,* Attorney for Appellee.

TERRELL, J.—Appellant and appellee were married in Illinois October 18th, 1893. They lived together as man and wife in Illinois, Missouri and California till August, 1922, at which time in the last named state they entered into an agreement for the division of their community property accumulated during coverture. This agreement being executed and their community property divided satisfactory to both, appellee took up his residence with his two daughters in an apartment where he continued to live till January, 1923, when the agreement to divide their community property was modified to permit appellee to pay appellant a lump sum of one thousand dollars in lieu of the one item of sixty-five dollars per month for her

maintenance as provided in the original contract. The thousand dollars having been paid appellee at once left California for Florida.

In March, 1925, appellee filed his bill for divorce in Polk County, Florida, alleging desertion and refusal of the appellant to live with him and that he had made ample provisions for the support of appellant. Appellant filed her answer in which was incorporated a demurrer to the bill for divorce denying all the material allegations thereof and alleging that the contract for the division of their community property was procured by duress and was illegal and void as against public policy. Testimony was taken by a special master and on final hearing the chancellor found the equities to be with the appellee (complainant in the divorce suit) and decreed him an absolute divorce from appellant. Appeal is taken from that decree.

The only question considered here is whether or not the contract for the division of the community property was illegal and void as against public policy. In other words does it in any way promote the procurement of a divorce.

The law is well settled that contracts intended to facilitate or promote the procurement of a divorce will be declared illegal as contrary to public policy. 9 R. C. L. 254 and cases there cited. The reason for the rule as defined by the law writers is that a suit for divorce is in reality a triangular proceeding in which the husband, the wife and the state are parties. The marital relation unlike ordinary relations is regarded by the law and the state as the basis of the social organization. The preservation of that relation is deemed essential to the public welfare. Adams v. Adams, 25 Minn. 72. When the marriage relation has been assumed, it is indissoluble except by the solemn judgment of a court for some cause which after severe and jealous scrutiny, the court shall find sufficient

under the law to warrant the judgment. Smutzer v. Stimson, 9 Colo. App. 326, 48 Pac. Rep. 314. Such agreements between the parties intending to facilitate the procuring of a divorce are therefore a fraud upon the law and the courts who in behalf of the state administer the law. Sayles v. Sayles, 21 N. H. 312.

Under the early English Common Law the like rule applied to agreements on the part of husband and wife to live separate and apart but later judicial opinion experienced a change as to public policy on this point. 9 R. C. L. 524 and cases there cited. The general rule both in England and this country appears to be that such agreements when they contemplate a separation in *presenti* or the continuance of an existing separation if predicated on a moving cause and not on mutual volition or the mental caprice of the parties will be upheld. Walker v. Walker, 9 Wall. (U. S.) 743, 9 R. C. L. 524 and cases there cited. By parity of reasoning according to the weight of authority *bona fide* agreements relating to alimony or the adjustment of property rights between husband and wife, though in contemplation of divorce will be upheld if not directly conducive to the procurement of a divorce. Julier v. Julier, 62 Ohio St. 90, 56 N. E. Rep. 661, 78 A. S. R. 697, Notes; 11 Ann. Cas. 379 and cases cited; Ann. Cas. 1915-A, 811; 9 R. C. L. 256; Appleby v. Appleby, 100 Minn. 408, N. W. Rep. 305, 117 A. S. R. 709, 10 L. R. A. (N. S.) 590.

The contract here brought in question shows on its face to be one for "a division of the community property which they have accumulated during their married life." Such contracts are recognized and upheld under the law of California where it was executed. Hensely v. Hensely, 179 Cal. 284, 183 Pac. Rep. 445. Other provisions in this contract when taken with the amendment thereto relieves the

parties each from the other from any responsibility for maintenance or support or from thereafter in any way participating in the division of the estate or property of each other, but we find nothing therein to promote or facilitate the procurement of a divorce. It is true that the parties thereto lived separate and apart after the execution of said contract but it appears to have been deliberately entered into and was entirely satisfactory to both parties at the time of execution.

The evidence amply supports the finding of the chancellor. There was failure on the part of appellant to show that the contract was procured from her by duress, it appears valid under the law of California and is not such a contract as would be void as against public policy.

It follows that the decree below was proper and is affirmed.

WHITFIELD, P. J., AND BUFORD, J., concur.

ELLIS, C. J., AND STRUM AND BROWN, J. J., concur in the opinion.