MARTIN POTTER, *Appellant*, vs. CRAMER B. POTTER, Individually and as Executor; and EUGENE HALE, *Appellees*.

Division A.

Opinion filed March 20, 1931.

*D. Neil Ferguson,* for Appellant;
*Frank E. Jennings,* for Appellees.

BUFORD, C.J.—In this case the appellant filed a bill of complaint against the appellees' seeking to cancel what purported to be the last will and testament of Harry B. Potter as probated in Duval County, and to have the appellant adjudicated the sole devisee under a purported former will of Harry B. Potter; to require Cramer B. Potter to execute an assignment and transfer of all the property and assets of the estate of Harry B. Potter which had come into the hands of Cramer B. Potter as Executor of the Last Will and Testament of the said Harry B. Potter, deceased, and to require an accounting of the estate of Harry B. Potter and to adjudicate the purported will executed by Harry B. Potter to Martin Potter to be the Last Will and Testament of Harry B. Potter and to decree that all the property of the estate of Harry B. Potter, deceased, except that required to pay just debts and funeral expenses, to be vested in Martin Potter, and for other relief.

The bill alleged, amongst other things, that Martin Eaton was the son of Lucile M. Potter by a former marriage and that during the time that Harry B. Potter and Lucile M. Potter were living as husband and wife, after lawful marriage, Martin Eaton was adopted, pursuant

to legal proceedings, by the Potters and assumed the name as decreed by court of Martin Potter. The petition for adoption and the decree of adoption are each attached to the bill of complaint and made a part thereof.

The bill further alleges that on the 8th day of August, 1927, Harry B. Potter and Lucile M. Potter, being then husband and wife but living separate and apart from each other, entered into a certain agreement, which agreement is attached to the bill of complaint and made in part thereof. The agreement is in the following language:

"Jacksonville, Florida, August 8th 1927.

MEMO. of Agreement in Re Suit of Lucile M. Potter, complainant, vs. Harry B. Potter, defendant.

The complainant will not obtain or attempt to obtain a decree for alimony in said cause.

The defendant has placed in the custody of the solicitor for the complainant the following papers for delivery to the complainant upon rendition of final decree of divorce in said cause:

Warranty deed of conveyance from Harry B. Potter to Lucile M. Potter, his wife, dated August 8th, 1927, covering lots 16 and 17, block 6, Brentwood;

Last Will and Testament of Harry B. Potter, dated August 8th, 1927;

Promissory note of Lucile M. Potter to H. B. Potter for $1,000.00 dated October ...., 1925;

Certified check of H. B. Potter to Lucile Martin Potter for $500.00.

The defendant also delivers to the complainant, upon the signing of this agreement, his two checks in her favor, one for $20.00 and the other for $35.00.

The defendant will not be under any obligation to pay and will not pay any bills of the complainant after the signing of this agreement. .

The defendant will pay solicitor's fees and costs of said suit.

(Signed)   Lucile M. Potter.
Complainant
Harry B. Potter
Defendant."

It is then alleged that Harry B. Potter executed a will in due and legal form in which he named Martin Potter as his sole devisee and named his wife, Lucile M. Potter, as Executrix of the will. The will is also attached to the bill of complaint and made a part thereof. Afterwards, it is alleged that Harry B. Potter on the 20th day of January, 1928, made and executed in due form another Will in which he attempted to revoke and make void all Wills by him theretofore made and in which he bequeathed to Martin Potter the sum of $2500.-00 and to Eugene Hale the sum of $300.00 and the entire residue of his property to his brother Cramer B. Potter of St. Petersburg, Florida. This latter Will was admitted to probate on the 17th day of July, 1928, after the death of Harry B. Potter.

The record shows that there was no suit pending for a divorce at the time of the agreement between Potter and wife and the making of the Will in favor of Martin Potter, but that divorce proceedings were filed on the 15th day of August, 1927, seven days after the agreement was made and that final decree of divorce was entered in that suit on the 14th day of September, 1927, no contest having been made by the defendant therein.

The record discloses that Harry B. Potter and his wife Lucile M. Potter were living in the same house at the time the agreement was made between them, were living together except for the fact that Potter did not oc-

cupy the same room with his wife nor cohabit with her further than to furnish a place of residence and the necessities of life, about which there appears to have been some quarreling and unpleasantness.

There was a demurrer to the bill of complaint and the demurrer was sustained. There are several good reasons why it should have been sustained. The pleadings show no consideration passing to Harry B. Potter for the execution of the will in favor of Martin Potter. There is no showing that there was any agreement or understanding that Harry B. Potter could not exercise his right to revoke that Will and make another at any time that he saw fit and the pleadings show that he pursued that course.

Aside from these observations, no reasonable conclusion can be drawn from the contents of the bill of complaint and the exhibits attached thereto except that the agreement upon which complainant relied as basis for his suit was made to facilitate the procuring of a divorce and for that reason was a fraud upon the court and was void in law. No suit was pending at the time the agreement was made but seven days thereafter a suit for divorce was filed by the wife against the husband. The husband was served with process in that case and made no appearance. The entire record of the divorce case is attached to the bill of complaint as an exhibit and part thereof. The evidence of the existence of any ground for divorce is flimsy, indeed. The divorce was granted within thirty days after the bill was filed.

Our civilization and moral standards rest largely upon the existence of homes and the family relation. The existence of the family relation is based upon the sanctity of the marriage relation and for that reason the

State is a party interest in every marriage contract and so zealously does it regard and guard this interest for the promotion of public welfare and of private morals as to hold itself to be a party to every marriage contract which is entered into or recognized by the parties within its jurisdiction and to this end it is the policy of the State not to permit the dissolution of the marriage relation by any agreement between the other two contracting parties, but only when the State, through its Judicial branch, determines that there are just grounds as provided and defined by statute for the annulment of the marriage relation and enters the decree of this court terminating the contract.

It is held in practically all the courts of this Country that an agreement between the parties to facilitate the procuring of a divorce is illegal and void.

We need not go beyond the portals of this Court to find authority for this enunciation. In Gallemore vs. Gallemore, 94 Fla. 516, 114 Sou. 371, this Court, in an opinion prepared by Mr. Justice Terrell, said:

> "The law is well settled that contracts intended to facilitate or promote the procurement of a divorce will be declared illegal as contrary to public policy. 9 R. C. L. 254 and cases there cited. The reason for the rule as defined by the law writers is that a suit for divorce is in realty a triangular proceeding in which the husband, the wife and the state are parties. The marital relation unlike ordinary relations is regarded by the law and the state as the basis of the social organization. The preservation of that relation is deemed essential to the public welfare. Adams vs. Adams, 25 Minn. 72. When the marriage relation has been assumed, it is indissoluble except by the solemn judgment of a court for some cause which after severe

and jealous scrutiny, the court shall find sufficient under the law to warrant the judgment. Smutzer vs. Stimson, 9 Colo. App. 326, 48 Pac. Rep. 314. Such agreements between the parties intending to facilitate the procuring of a divorce are therefore a fraud upon the law and the courts who in behalf of the state administer the law. Sayles vs. Sayles, 21 N. H. 312.''

The order appealed from should be affirmed and it is so ordered.

Affirmed.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.