## NATALIE WEINSTEIN and DIANA D. COOPERSMITH, v. THE STATE OF FLORIDA.

9 So. (2nd) 710 En Banc
August 4, 1942 . Rehearing Denied October 12, 1942

Robert H. Anderson, and James E. Calkins, for plaintiffs in error.

William A. Hallowes, III, J. Tom Watson, Attorney General, Millard B. Conklin, Assistant Attorney General, and Woodrow M. Melvin, Special Assistant Attorney General, for appellee.

BUFORD, J.:

In this case two young women, college and law school graduates, members of the bar and of previous good character and reputation, are shown to have been guilty of grave infractions of the rules of professional ethics. In fact, both freely, honestly and with apparent humility and regret, admit the irregularities in their law practice in connection with divorce cases.

They were charged with having forged answers, waivers and stipulations filed in such cases. This, the most serious charge made, they deny and the record fails to reveal proof of that charge. There is nothing in the record which shows either of the appellants to have been guilty of any immoral or criminal act.

It is the opinion of the writer that the charges proven as to irregular and unethical acts were not so serious as those made and proved in the case of In the Matter of Charges of Unprofessional Conduct against

Samuel Rubin, opinion filed here on the 12th day of May, 1942. The majority of the Court does not concur in this view. In that case we reduced the period of suspension from five years as fixed by the Circuit Court to two years. In this case the order was of suspension for a period of five years.

In an able opinion prepared by Mr. Justice TERRELL in the case of J. Carl Lambdin v. State, filed at this term of the Court, the Court availed itself of the opportunity to enunciate clearly the rules of conduct which must govern members of the Bar in the practice of law, if the Bar is to retain the confidence and respect of the public. We shall not now assume to add to what was said in that case.

The conduct of these young women merited the condemnation which it has received; but, in view of all the facts, we think the judgment of five years suspension was equivalent to disbarment and was out of proportion to the wrong which they did.

The information was in thirty-two counts. The thirty-second count was too vague and indefinite to constitute a charge which the accused were required to answer.

The State failed to sustain by proof some of the material allegations of each and every of the other counts of the Information. In attempting to prove the allegations of such counts the State did prove repeated irregular actions and reprehensible conduct committed by the accused.

Also, the record discloses that these unethical, irregular and reprehensible actions on the part of the accused were, as heretofore stated, admitted by them in their formal answer, as well as in their testimony. Therefore, upon consideration of the entire record and

the arguments and briefs of counsel, it is on the evidence and the admissions of respondents in the court below, ordered and adjudged that the "order of suspension" is hereby affirmed with the exception that the suspension of respondents be and is hereby adjudged to be "for and throughout a period of two years from date of the original order.

It is so ordered.

BROWN, C. J., WHITFIELD, CHAPMAN, THOMAS and ADAMS, JJ., concur.

TERRELL, J., dissents.

CHAPMAN, J., concurring:

Challenged on this appeal is an order entered by the Circuit Court of Dade County, Florida, suspending from the office of attorney at law for a period of five years Natalie Weinstein and Diana D. Coopersmith, formerly engaged in the practice of law with offices at Miami Beach, Florida, under the firm name of Weinstein & Coopersmith. The trial court entered the suspension order based on a motion of the State Attorney to disbar the appellants because of dishonest conduct, deceit, tempering with court records, and other acts of unprofessional conduct growing out of the handling by them of numerous divorce suits during the years 1939, 1940, and 1941. The files of these several divorce actions have been transmitted here and by the Court duly considered.

The appellants by answers and in their testimony denied that they misled, or deceived the court, or that they filed spurious, or forged pleadings, or reports, or made false representations to the Master of the Court while professionally engaged in handling the divorce suits described in the pleadings. As a defense

to the motion to disbar by answer they set out that pursuant to a recognized practice then obtaining and common in Maimi Beach, they reached an agreement with attorney Leon Stoller, whereby they (Weinstein & Coopersmith) requested their clients to procure their spouses to designate Stoller to represent them in their (Weinstein & Coopersmith) cases and to authorize him to appear, answer and sign stipulations for the expedition of and promotion of the progress of the several divorce suits. Stoller likewise had a reciprocal agreement with Weinstein & Coopersmith applicable to divorce suits, where he appeared as attorney for the plaintiff.

The appellants represent that at all times they acted in good faith, intended no wrong, observed no impropriety in conducting the divorce litigation by them handled, but they simply followed a practice then established and prevailing in Dade County for the professional handling of such litigation.

The record discloses one of the appellants was a graduate of the Florida State College for Women and subsequently obtained a degree and diploma from the Law School of the University of Florida, and by the presentation of the diploma, the State Board of Law Examiners, as a matter of law, issued to her a certificate to practice law in the several courts of Florida. The other appellant is shown to be a High School graduate and likewise graduated from a reputable law school, after five years of study, and by an examination held by the State Board of Law Examiners, a certificate to practice in the several courts of Florida was granted to her. The qualifications of the appellants, both pre-legal and subsequent legal training,

under usual conditions, should well qualify each of the appellants for the practice of the law.

It is generally recognized that the right or privilege to engage in the practice of the law is a matter of grace to be granted or withheld on the part of the sovereign power rather than a matter of right, and, while the courts and the public can or may excuse, tolerate or indulge an attorney for an inadequate knowledge of the law applicable to contested issues on controverted matters, simultaneously no excuse or justification can exist for defects or want of character on the part of licensed attorneys.

The secretary of attorney Stoller for a period of six years testified that Stoller acted as defense counsel in divorce suits brought by Weinstein & Coopersmith, and Miss Coopersmith did the same for Stoller in suits brought by him; that Stoller gave form letters to his clients requesting the appointment of Weinstein & Coopersmith as counsel for defendants; that Stoller's name was used as defense counsel in suits brought by Weinstein & Coopersmith; that she (Stoller's secretary) brought to the attention of Stoller authorization letters reaching his office and a formal answer would be filed; then a stipulation signed by counsel would be filed in the cause to the effect that the giving of notice as to the place and time of the master's hearing, the proceedings before the master, the notice of filing of the Master's report, as well as findings and the application for a final hearing and the entry of a final decree would be waived. These stipulations appearing in the record would have the signatures of Weinstein & Coopersmith, attorneys for plaintiff, and Leon Stoller, attorney for defendant, or Leon Stoller, attorney for

plaintiff, and Weinstein & Coopersmith, attorneys for defendant.

Pursuant to the aforesaid agreement existing between Weinstein & Coopersmith and Leon Stoller it would be possible to obtain a divorce decree in a period of time not authorized by the chancery practice, i. e.: In the case of Gottehrer v. Gottehrer a sworn bill of complaint signed by Freda Edelstein Gottehrer and notarized by Natalie M. Weinstein was filed on March 14, 1941. On March 19, 1941, a stipulation was filed in the cause signed by Weinstein & Coopersmith, attorneys for plaintiff, and Leon Stoller, attorney for defendant. On March 19, 1941, Leon Stoller filed an answer for the defendant bearing Sidney Gottehrer's signature. On March 19, 1941, Weinstein & Coopersmith filed a motion for an order of reference, which granted under date of March *14,* 1941. On March 21, 1941, testimony was taken before James Halley Ruby, special master, and was filed on the same date. The evidence taken consisted of four pages, two of which contained the testimony of the plaintiff and the remaining two pages contained testimony to the effect that plaintiff had resided in Florida for a period of ninety days or more. On March 21, 1941, Weinstein & Coopersmith filed a motion for a final decree, and on March 28, 1941, a final decree of divorce was signed by Worth W. Trammell, circuit judge. It is shown that a final decree of divorce was obtained in fourteen days.

The proceedings in the Gottehrer suit are typical of the many divorce suits where the files in the lower court have been certified to this court. The procedure here outlined has by this Court been disapproved. See Rice v. Rice, 148 Fla. 620, 4 So. (2nd) 850.

Counsel for appellants in their brief condemned the procedure in language viz: "We make no pretense at justifying this practice. It is to be condemned vigorously." We are unable to find in the record testimony offered by the State sufficient to sustain the charge of forgery against Weinstein & Coopersmith. We do not understand that an order of disbarment or suspension would preclude a prosecution by the State of Florida for the violation of any of the criminal laws of Florida, inclusive of the crime of forgery.

It has been the established law of Florida for seventy-five years, or more, that a divorce proceeding consists of three parties: (a) the plaintiff; (b) the defendant; and (c) the State of Florida. While the State of Florida has not by statute established a public officer charged with the duty to defend divorce suits like many States of the Union, the court, entertaining jurisdiction of the divorce suit, by law is charged with the solemn duty and obligation to protect the public and incidentally those persons not before the court. The State is not only interested in divorce but marriages, helpless offspring, property rights, and such other interests as may affect the public safety and general welfare. See Underwood v. Underwood, 12 Fla. 434; Hancock v. Hancock, 55 Fla. 680, 45 So. 1020; Gallemore v. Gallemore, 94 Fla. 516, 114 So. 371; Potter v. Potter, 101 Fla. 1199, 133 So. 94; Kennedy v. Kennedy, 101 Fla. 239, 134 So. 201; Allen v. Allen, 111 Fla. 733, 150 So. 237; Frohock v. Frohock, 117 Fla. 603, 158 So. 106; Schouler on Marriage, Divorce, Separation, etc., Vol. 2 (6th Ed.) par. 1478 and 1519, pages 1732 and 1759. The appellants as officers of the court, were by the law charged with the solemn duty and responsibility of

assisting the court in administering the law. In the discharge of these responsibilities the record discloses that they signally failed.

The appellants, as young attorneys, in a measure may be justified in concluding that the law applicable to divorces should, in the light of modern legislative trends, be interpreted with great liberality in authorizing the issuance of a decree of divorce. The enactment of Chapter 16010, Acts of 1933, and Chapter 16975, Acts of 1935, Laws of Florida, whereby the residential requirements in Florida by a plaintiff prior to filing suit for divorce was reduced from two years to one year and thence to ninety days, is cited to sustain the alleged liberalized view. It is possible that the enactment of these measures influenced the professional conduct now before the court. The two years residential requirements prior to filing a divorce suit in the courts of Florida obtained for a period of eighty years and was altered by the enactment of Chapter 16010, Acts of 1933. Chapter 16010 and 16975, *supra,* reduced the residential period in Florida prior to filing a divorce suit, but otherwise did not change, alter or amend the law of Florida applicable to divorce.

Divorce proceedings in Florida are regulated by statute. Attorneys, when drafting a bill of complaint in a divorce suit, are required to allege every fact clearly, accurately, and definitely so as to contain or charge the essential elements of any of the nine grounds for divorce recognized by the laws of Florida. If essential facts are omitted, or if from facts stated it appears that the plaintiff is not entitled to the relief sought, then there is no standing in a court of equity. See Moseley v. Taylor, 68 Fla. 294, 67

So. 95; Chisholm v. Chisholm, 98 Fla. 1196, 125 So. 694; Kellogg v. Kellogg, 93 Fla. 261, 111 So. 637. Personal or constructive service on the defendant should be obtained in the manner and form prescribed by law, and a decree pro confesso entered on a rule day against the defendant by the Clerk because of the defendant's failure to appear or to answer or plead to the bill of complaint. If the bill of complaint alleges the essentials of a statutory ground of divorce, and the court has acquired jurisdiction of the parties, then a motion for an order of reference can or may be granted, or the testimony may be heard by the chancellor. Stipulations signed and filed in a divorce suit by counsel for the parties are not binding on the court. The law charges the chancellor with the duty of protecting the State of Florida, the third party to every divorce action. The appellants, as officers of the court, by law are required to assist the court in administering the law.

Counsel for appellants in their brief and during oral argument at the bar of this Court condemned the reprehensible and unethical conduct of the appellants as disclosed by the record. They point out that the five year suspension period here under review will deprive their clients of the right to earn a livelihood and is tantamount to permanent disbarment. We think there is merit to this contention. If the appellants continue to disregard the ethics and traditions of the profession and ignore the law and their duty and obligation to the court, it is possible that the order of suspension should be altered so as to enter an order of permanent disbarment. The Samuel Rubin disbarment case was recently considered by this Court and we sustained a two year suspension

order. The order of suspension should be affirmed but the period of suspension reduced. I concur in the opinion and judgment prepared in this case by Mr. Justice BUFORD.