FLORIDA NATIONAL BANK AND TRUST COMPANY AT MIAMI, a United States Banking and Trust Corporation, and H. F. Ward, as Executors of the Estate of C. B. Moak, deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 9459-M.

United States District Court
S. D. Florida,
Miami Division.

April 1, 1960.

W. G. Ward, Miami, Fla., for plaintiffs.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Myron C. Baum, George Elias, Jr., Attys., Dept. of Justice, Washington, D. C., for defendant.

WYCHE, District Judge (sitting by designation).

The Florida National Bank and Trust Company at Miami, a United States Banking and Trust Corporation, and H. F. Ward, as Executors of the Estate of C. B. Moak, deceased, did on September 17, 1959 file their complaint in the District Court of the United States, Southern District of Florida, Miami Division, in which the said executors, on behalf of the Estate of C. B. Moak, claimed that the United States of America was indebted to them in the approximate sum of $118,726.52, together with interest that may be allowed by law.

The basis for the claim was a suit for refund for the over-payment of estate taxes of the Estate of C. B. Moak, deceased.

The United States of America filed its answer which, in substance, claimed that the Estate of C. B. Moak, deceased, should not be allowed to deduct an amount which equaled one-third of the net estate passing to the divorced wife

of C. B. Moak, deceased, under and by virtue of a final decree of divorce, as a claim against the estate, thus reducing the net taxable estate for estate tax purposes.

There were other minor features involved in the answer which have been disposed of by the stipulation of facts entered into between the parties, or by admissions made in the briefs, and which will be passed upon in this order.

### Findings of Fact

The parties have entered into a written stipulation as to facts which was filed before the Court in lieu of the taking of extensive testimony, and this Court need only briefly analyze the substance of that stipulation and the resultant facts which are established by reason thereof, as follows:

Clarence Brett Moak, who was a resident of Dade County, Florida, died on December 5, 1955, and the plaintiffs herein were duly appointed as the executors of the Estate of Clarence Brett Moak, deceased.

During the course of the administration of that estate, the plaintiffs did on March 5, 1957 file with the District Director of Internal Revenue the Federal Estate Tax Return for the Estate of Clarence B. Moak, and paid the tax shown due thereon.

On January 21, 1958 the plaintiffs filed a timely claim for refund of estate taxes paid in the sum of $118,726.52. This claim was disallowed in full, notice thereof having been given by registered letter of August 18, 1959. This action was timely instituted on September 17, 1959.

In the stipulation, the historical background was fully set forth.

On December 30, 1942, Evelyn J. Moak, former wife of C. B. Moak, filed a bill of complaint for divorce from C. B. Moak in the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County, Florida, Chancery No. 77007. On January 13, 1943 a final decree of divorce was entered in said proceedings granting a divorce to Evelyn J. Moak. In this de-cree, the Court adopted as a settlement or alimony provision and made a part of the decree, a contingency agreement which had been entered into between the parties on the 30th day of December, 1942, the day the divorce action was filed. The pertinent portion of the decree with reference to the alimony or property settlement is contained in the following paragraph:

"Whereas in the event a final decree of divorce is granted to the party of the second part it is the desire of the parties hereto to agree as to alimony payments and as to settlement of all property rights between the parties with the understanding that this agreement will be made a part of the final decree as and when granted,

"Now, Therefore, In consideration of the premises and the further consideration of the mutual covenants and conditions hereinafter set forth, and in the event a final decree of divorce is granted to the party of the second part, the parties hereto do agree as follows:"

Then in the decree and in the agreement, eliminating other immaterial portions, the decree provided (par. 3):

"3. Party of the first part further agrees that he will prepare and execute his Will under and by the terms of which he will leave to the party of the second part 1/3 of his net estate with the provision, however, that the trust fund herein provided for shall constitute and be a part of the 1/3 interest in his estate and that the difference if any due to the party of the second part between the amount representing 1/3 interest in the net estate of the party of the first part and the trust fund herein created shall be paid to the party of the second part by the executor named under the Will as soon as permitted by the laws of the State of Florida."

This Court is not concerned with the actual computation of the amount be-

cause in paragraph 11 of the stipulation it was provided:

"11. In the event that the Court should decide that plaintiffs are to prevail herein, the amount of recovery to which they are entitled shall be based upon a computation made by the Internal Revenue Service and approved by the parties and the Court."

The agreement, dated the same day the bill of complaint was filed in the divorce action, was wholly contingent upon the divorce decree being entered, and the actual divorcement being concluded by that decree in favor of the plaintiff, Evelyn J. Moak. The agreement by its own terms was not effective as a separation agreement, irrespective of divorce, and was not to be effective in any respect unless the Court granted the divorce in favor of Evelyn J. Moak and made this property settlement a part of the actual decree of divorce. The entire agreement was conditioned upon those two events taking place.

It further appears without dispute that the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County, Florida, did upon petition filed on December 12, 1946 in said divorce action, grant a slight increase in the monthly alimony allowance without in any way changing the provisions of the original decree with reference to the requirement that C. B. Moak in his will provide for one-third of his net estate to go to Evelyn J. Moak. Later, on November 17, 1955 the said Evelyn J. Moak applied to the same Court in the same proceedings and had a slight increase in her monthly alimony granted by the Court, without disturbing in any way the provisions of the original decree with reference to the will. This order was entered on November 17, 1955. Just several weeks later, on December 5, 1955, C. B. Moak died, a resident of Dade County, Florida.

The will, copy of which was attached to the stipulation as an exhibit, failed to make the provisions which were required in the final decree of divorce.

After the death of C. B. Moak and during the administration of the proceedings, Evelyn J. Moak instituted a suit in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, chancery number 191008, which resulted in a final decree of said Court entered on December 12, 1957, in which that Court, in addition to other orders not relevant to this proceeding, made this distinct order:

"1. That the plaintiff, Evelyn J. Moak, is entitled to receive outright and without any restrictions or reservations or trust provisions, ⅓ of the net estate (as hereinafter defined) of C. B. Moak, Deceased, the distribution thereof to the said plaintiff to be in kind from the assets remaining in the hands of the Executors as of this date. Whereever distribution in kind is impossible or impractical because of the nature of the assets, said assets shall be sold and distribution made in cash, provided, however, that reference herein set forth to distribution in kind shall include a fractional interest in any assets now held by the Executors, the sale of which would cause the estate to take an unreasonable loss or discount through forced sale."

Paragraph 3 of the said decree of the 12th of December, 1957 gave recognition to the fact that a trust fund in the nature of an escrow deposit had been set up under the terms of the original decree during the lifetime of C. B. Moak, and provided that whatever Evelyn J. Moak received from that escrow created during the lifetime of C. B. Moak, should be deducted by the executors from the final determination of her one-third interest in the net estate.

It appeared in the hearing before the Court that counsel for the Government contended that this escrow fund created during the lifetime of C. B. Moak, consisting at the time of his death of approximately $29,000, but the title to which did not pass until date of death to Evelyn J. Moak, as well as the pro-

ceeds of a life insurance policy in the amount of approximately $5,000, should have been included in the gross estate. Counsel for the plaintiffs, both in the statement before the Court and in the written briefs filed before the Court, have conceded that point, but have made the suggestion that if that sum of approximately $35,000 is included in the gross estate, then that in turn would have reflected in the increased value of the net estate and would increase by one-third of whatever that amount is, the total claim of Evelyn J. Moak against the estate.

In view of the stipulation, paragraph 11, above mentioned, and the concession of both counsel in the case, the Court finds as a matter of fact that those amounts in the approximate sum of $35,-000, should have been included in the gross estate if they were not so treated in the original return, and that in the final computation of the over-all tax claim refund, both the plaintiffs and the Government shall take that factor into consideration and make adequate adjustment.

This sum of approximately $35,000 in controversy being rather an insignificant portion of the total issue involved, when included in the gross estate, will require some re-computation which will probably result in some diminution of the over-all claim of the plaintiffs, but that is a matter which the Court will reserve until final determination by the parties under the stipulation, paragraph 11, as above mentioned. If the parties cannot agree upon the final amount as redetermined, then this Court reserves the right and jurisdiction by subsequent order to fix the exact amount, because it is conceivable that in making this readjustment, amended returns could be filed or stipulated upon which might include other items of expense which will be agreed upon between the parties under the stipulation, paragraph 11.

### Conclusions of Law

The Court has fully analyzed the extensive briefs filed by the respective parties, and has reached the conclusion that the position of the plaintiffs, subject only to the minor modifications which have been agreed upon, is correct, and that this case should be decided in favor of the plaintiffs, the taxpayer.

While the decisions on this point are numerous, yet both parties concede that insofar as the question of federal taxation is concerned, the basic principles are governed by the case of Harris v. Commissioner, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111. The substance of the Harris case as construed by various other courts subsequent to the Harris opinion, and in particular by the United States Court of Appeals for the Second Circuit in the case of Commissioner of Internal Revenue v. Estate of Watson, 216 F.2d 941, hold that where a separation agreement, even though entered into prior to actual entry of the decree of divorce, is conditioned upon the entry of the decree of divorce and the approval of that agreement by the Court having jurisdiction of the divorce action, that it is the divorce decree itself which is the basis of the allowance of the claim, and that therefore the claim of the wife against the estate of her husband for the amount to which she was entitled under the agreement and the decree, was founded on the divorce decree and not on the agreement, and the amount paid in satisfaction of the claim was deductible from the husband's gross estate.

In the opinion by the United States Court of Appeals, Second Circuit, in the case of Commissioner of Internal Revenue v. Estate of Watson, supra, opinion prepared by Circuit Judge Harlan for the Court, the basic decisions were analyzed, and in particular, the Supreme Court of the United States decision of Harris v. Commissioner, supra, was analyzed in the light of a direct allowance of the claim against the estate of the former husband. In the body of the Watson opinion, the Court quoted with approval from a decision of the United States Court of Appeals for the First Circuit in McMurtry v. Commissioner, 1953, 203 F.2d 659, and Judge Harlan

adopted the language of that Court, as follows (216 F.2d 944):

" 'We read Harris v. Commissioner more broadly as supporting the proposition that, to the extent that the statute does not explicitly command adherence to meaningless formalities, all transfers agreed upon in contemplation of divorce and executed after approval by a divorce court having jurisdiction to give such sanction or in its discretion to prescribe some different property settlement, should be exempt from the gift tax.' In light of what we consider to have been the purposes of § 812(b) (3), we believe this to be the correct view of the Harris case."

While numerous other cases have been cited and text citations given, including Mertens, Law of Federal Gift & Estate Taxation, Vol. 5, Page 180, ¶ 34.41 and other paragraphs, it seems clear that whatever may have been any apparent conflict in the older decisions, these conflicts were all set to rest by the United States Supreme Court decision of Harris v. Commissioner, and that that rule has been adhered to since.

There seems to be no real dispute about the federal law on this subject, but counsel for the Government contend that there is something distinct in the Florida law which would call for a construction upon a different basis.

■ The Court has analyzed the various Florida decisions, among others, the cases of Hunter v. Hunter, Fla.App., 108 So.2d 478; Kosch v. Kosch, Fla., 113 So.2d 547; Strozier v. Strozier, Fla.App., 107 So.2d 134, and it is the opinion of this Court that under the established Florida law, the Judge in the divorce proceedings which are handled under the chancery procedure in Florida, is given full power at the time he enters the initial divorce decree to fix the rights of the parties. That Court would have the right to approve of a prior separation agreement or to modify or disapprove of it in its entirety. Once that has been accomplished, it becomes the order of

the Court and the decree becomes the basis for the settlement, and that is all which is involved under the issues raised in this case.

When the divorce decree was entered in the Moak case, it was the decree which fixed the rights of the parties. The Court could have refused to enter that decree .or could have modified the findings.

Counsel for the Government has relied largely upon the Florida decision of Underwood v. Underwood, Fla., 64 So.2d 281. This decision is not in point and does not support the Government's position. In the Underwood case the Supreme Court of Florida was concerned only with the right of the chancellor to modify by subsequent proceedings a divorce decree which had incorporated in the decree the terms of a separation agreement. There was no question raised in that case as to whether the chancery court at the time of the entry of its first decree could have changed the terms and conditions of the agreement.

■ Florida Statutes, § 65.08, F.S.A., clearly vests in the chancery court having jurisdiction of the divorce proceedings, the right to make any orders touching the maintenance, alimony, suit money of the wife, or any allowance to be made to her, and while it is true that under the Florida law the courts of Florida will usually recognize and adopt the parties' agreements, if free from fraud or if they appear to be fair under all the circumstances, yet the Court does have the power and duty to approve or disapprove the agreement, and is not bound to accept the stipulations of the parties.

In the Florida Supreme Court decision of Gallemore v. Gallemore, 94 Fla. 516, 114 So. 371, it clearly appears that preliminary agreements of the parties with reference to alimony or property rights will not be adopted by the Court and may be disregarded if they do not meet the standards of public policy or do not meet the other standards set up by the Court. The fact that the Divorce Courts of Florida may under the doctrine laid down in the Supreme Court of Florida

decision of Gross v. Gross, 154 Fla. 649, 18 So.2d 538, approve of and adopt such agreements when they are free from fraud, does not change the basic right of that Court to modify or ignore such agreements.

It is therefore clear that under the Florida Statutes and under the Florida Supreme Court decisions, the right of the Court to initially approve or disapprove of these agreements is unquestioned. This, of course, is particularly true in the case at bar because the separation agreement was only a provisional or temporary proposed agreement which was not even effective until the Court adopted it or granted a decree of divorce. This Court is not concerned with the power of the Courts of Florida after the entry of the first decree to thereafter modify it, under the provisions of Section 65.15 of the Florida Statutes, F.S.A. The decree in the Moak case was not modified or set aside after it was entered with reference to any provisions concerning the duty of the husband to will one-third of the net estate to his former wife, Evelyn J. Moak.

## Conclusion

■ Under the facts as above set forth and under the applicable federal and State of Florida law, the Court finds for the plaintiffs, and it is therefore considered, ordered and adjudged that judgment for the plaintiffs is hereby entered as against the defendant, United States of America, and that the United States of America be and the same is hereby ordered and directed to pay to the plaintiffs the amount claimed for refund of taxes over-paid, together with interest.

In view of the stipulation entered into between the parties, particularly paragraph 11 thereof, which has been heretofore set forth in this order, the Court reserves jurisdiction for the purpose of entering the exact amount of the money award for a period of sixty days from date hereof, in order to give the respective parties sufficient time in which to stipulate the amount of the exact money award, together with interest from the date determined by the stipulation. In the event said stipulation cannot be agreed upon, the parties shall within the sixty days time both submit to this Court their computation, and the Court will enter the monetary award based thereon.

It is further ordered that the defendant, United States of America, in entering into the stipulation as to the money award to be computed under the terms of this judgment, shall not waive any right to review this judgment by appropriate appeal.