206 So.2d 650 (1968)
James D. DANNER, Appellant,
v.
Hazel B. DANNER, Appellee.
No. 67-411.
District Court of Appeal of Florida. Second District.
February 7, 1968.
Thomas N. Kiernan, of Kiernan & Reams, St. Petersburg, for appellant.
John E.M. Ellis, of Ellis & Logan, St. Petersburg, for appellee.
*651 PIERCE, Judge.
This is an interlocutory appeal by James D. Danner, defendant below, from an order reinstating the complaint of his wife, Hazel B. Danner, plaintiff below, after a previous voluntary dismissal in a divorce case she had filed against him.
Plaintiff filed her complaint against defendant for divorce and it proceeded in due course to the time of final hearing. On the date set, May 25, 1967, just before final testimony on the merits was begun, joint counsel for the parties advised the Court that the principals had effected a reconciliation, whereupon the plaintiff's attorney orally moved the Court for a dismissal, and the Court thereupon dismissed the cause "without prejudice". Eight days later, on June 2, 1967, plaintiff wife filed her motion to vacate the order of dismissal, and after consideration of affidavits of both parties, the Court on July 26, 1967, entered order granting plaintiff's motion, setting aside the order of dismissal, reinstating the cause, and retaining jurisdiction over the subject matter and parties "for further proceedings in and about the adjudication sought herein".
The affidavit of plaintiff wife in support of her motion to reinstate averred that on the morning of the final hearing date, May 25, 1967, she offered to her husband "to enter into a reconciliation" with him and "to resume cohabitation"; that he told her "he was willing to enter into a reconciliation * * * and to resume cohabitation * * *"; that she thereupon "consented to a voluntary dismissal of the divorce proceeding * * * in reliance upon his representations" aforesaid; and that shortly thereafter on the same date he stated "he had made a mistake and that he would not go through with the reconciliation or resume cohabitation with her, and that he thereafter left the parties' home and returned to Clearwater, Florida, for the evening and returned to Alabama the following day".
On June 26, 1967, the husband's affidavit was filed, made on June 23, 1967 in Pennsylvania, stating that immediately after jointly asking for dismissal of the divorce action on May 25th, they left the "County Building" together and shortly thereafter his wife resumed her "old custom" of "criticising and berating" him, accusing him of "playing the field", staying with mutual friends while waiting for the temporary support hearing, and quitting his employment and going to Alabama pending final hearing; and that on the next day they engaged in feverish acrimony, both vowing to see their respective lawyers, in the course of rather salty recriminations. The balance of his affidavit, in a conciliatory mood, deposed that he had informed his wife that although he had retired from the Army "to live a life of retirement", he would regain employment if it would "help in the reconciliation"; that although his wife had been "demanding and critical" of him for years he "still sincerely believes that their domestic difficulties may be resolved, absent a decree of divorce; that he believes it will require much patience, and that much of his wife's alleged grievances and complaints may be caused by her menopause".
Plaintiff wife filed a reply affidavit containing the usual denials and counter-accusations, not necessary to here narrate, common and customary in such disturbed marital situations. But the wife was likewise more ameliorating in tone in conclusion, averring that "she sincerely desired to effect a reconciliation and was willing to do everything that was reasonable to effect same" but denied that such failure "was totally her fault" and that "the decision not to reconcile was made by the defendant".
The record before us does not show whether further testimony was taken before the Chancellor, but it is immaterial and probably better for the parties if not. Because certain it is that any further "airing out" of their "fragile togetherness" in a confrontation session could have done nothing *652 to further ameliorate their situation and could only have resulted in "straining the leash" between them that much further. Quite evidently they were both resolute, strong-willed, high-minded, highly-principled persons, but with the not unusual propensities for being unyielding in the arena of "give and take".
In his order vacating the dismissal and reinstating the cause, the Chancellor observed that the dismissal order "was sought upon the mistaken belief that the parties had effected a full reconciliation in the cause, whereas in fact the parties discovered later the same day that they were totally unable to effect a reconciliation, and whereas the defendant did not resume cohabitation with plaintiff and instead left the State of Florida on the following day, rendering further efforts at reconciliation impracticable".
There was ample showing before the Chancellor in the proofs submitted to sustain his findings. But the vexatious question for us to resolve is whether in view of those facts the Court was warranted in vacating the dismissal order and reinstating the case on the merits. While the case is not free from doubt we are inclined to affirm, but not upon the grounds urged by the wife or the Court below.
Plaintiff contended successfully in the lower Court that she was entitled to have the order of dismissal set aside under either Rule 1.530 or Rule 1.540, Florida Rules of Civil Procedure, 31 F.S.A., but we fail to see the applicability of either rule.
Rule 1.530, under heading of "Motions for New Trials and Rehearing", provides:
"(a) Jury and Non-Jury Actions. A new trial [obviously in jury cases] may be granted to all or any of the parties and on all or a part of the issues. On a motion for a rehearing of matters heard without a jury * * * the court may open the judgment if one has been entered, take additional testimony and enter a new judgment".
Patently this portion of Rule 1.530 could not apply inasmuch as there had been no "matters heard without a jury" because there had been no "matters heard" at all; and therefore there could be no rehearing of such "matters". Also, the words "additional testimony" presupposes that some testimony has been previously taken. The balance of Rule 1.530 clearly has no application.
Rule 1.540 entitled "Relief from Judgment, Decrees or Orders" is also wide of the mark. Sub-section (a) has to do with "Clerical Mistakes" and is directed at "mistakes in judgments, decrees or other parts of the record and errors therein arising from oversight or omission", usually by officers of the Court, and includes matters such as clerical errors and misprisions, mathematical computations, misnomers or misdescription of parties, etc. Obviously it does not apply. Sub-section (b), the Rule mainly relied upon by plaintiff, provides inter alia as follows:
"(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party * * * from a final * * * decree * * * for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a * * * rehearing; (3) fraud * * * misrepresentation or other misconduct of an adverse party; (4) the * * * decree is void; (5) the * * * decree has been satisfied, released or discharged * * *" etc.
Subdivisions (4) and (5), having to do with void judgments and satisfied judgments respectively, plainly do not apply. Subdivision (2), having to do with newly discovered evidence, could not apply because *653 no previous evidence had ever been adduced. Subdivision (3), having to do with fraud, misrepresentation or other misconduct of the adverse party refers to fraudulent misrepresentations as to present or past "facts" concerning the litigation upon which plaintiff would have acted to her material detriment, not to promises or expressions of intent as to future conduct. It is by far the most serious charge that could be leveled toward an adverse party and must always be established by "clear and convincing evidence". See "Federal Practice and Procedure" by Barron and Holtzoff, Vol. 3, § 1326, p. 260, et seq., commenting upon Federal Rule 60(b), the counterpart of our Rule 1.540. This would clearly have no pertinence here.
This leaves subdivision (1), having to do with mistake, inadvertence, surprise, or excusable neglect. Pretermitting comment upon inadvertence, surprise or excusable neglect as clearly without relevance, plaintiff urges she was entitled to relief because of mistake. She says that "mistake" could logically cover the "mistaken belief of both parties and their attorneys that a reconciliation of the parties had been effected". No cases are cited in support of such contention. The few reported Florida cases upon the point rather clearly indicate that the "mistake" which the Rule refers to is not a mistake of the character she here suggests would bring her within the Rule.
Thus, in English v. Hecht, Fla.App. 1966, 189 So.2d 366, the trial Court on November 24, 1965, orally granted the defendant's motion to dismiss plaintiff's complaint with leave for plaintiff to amend within twenty days, followed by written order to such effect on November 29, 1965. On December 17, 1965, no amended complaint having been filed, the Court entered final judgment dismissing the cause because more than twenty days had elapsed since the verbal order, although less than twenty days from the written order. Plaintiff promptly moved the Court to vacate said final judgment because of the inadvertent mistake in calculating the time period within which the amended complaint could be filed. The trial Court denied the motion to vacate, but the 3rd District Court upon appeal reversed, holding that such failure was "due to mistake, inadvertence or excusable neglect" under Rule 1.38(b), the predecessor of present Rule 1.540.
In Polster v. General Guaranty Mortgage Company, Fla.App. 1965, 180 So.2d 484, the parties "severally moved for summary final decree" and upon argument thereof the trial Court "requested written memoranda on the law involved" and allowed specific times within which such adverse memoranda should be filed. Thereafter defendants filed their memorandum of law, whereupon the trial Judge inadvertently entered decree for defendants without waiting for plaintiff to file its written memorandum although the time period therefor had not expired. Upon motion the Court vacated the previous decree and in due course entered decree for plaintiff upon the merits. Upon appeal by defendants, the 1st District Court affirmed, holding that the vacating of the first decree was authorized by former Rule 1.38(b).
In International Advertising, Inc. v. Congress Enterprises, Inc., Fla.App. 1966, 187 So.2d 364, the 3rd District Court held the trial Court without error in denying a motion under said Rule 1.38(b) to allow the plaintiff after the pleading stage to state a new cause of action which, simply by oversight or inadvertence, had not been included in the previous pleadings.
In State ex rel. Huntley Bros., Inc. v. Gooding, Fla.App. 1963, 149 So.2d 55, the 1st District Court held that the trial Court was not authorized to vacate a final decree merely because "certain depositions had not been transcribed and filed as of the date of the hearing on the defendant's motion for summary final decree", holding that "any omission or mistake made in failing to furnish proofs was an omission or mistake on the part of plaintiff  not the *654 chancellor. This is not the type of omission or mistake contemplated by Rule 1.38".
It is manifest from the foregoing cases, two granting relief and two denying it, that the mistake relied upon by plaintiff wife in the case sub judice is not the type of mistake contemplated by present Rule 1.540(b). The mistake envisioned by the Rule is the type of honest and inadvertent mistake made in the ordinary course of litigation, usually by the Court itself, and is generally for the purpose of "setting the record straight". Here the mistake that the wife asserts was her alleged misplacing of confidence in her husband's intentions and good faith; in short, in a miscalculated reliance upon her husband's promises.
But, although plaintiff was not entitled to have the previous dismissal order vacated under either Rule 1.530 or Rule 1.540, we nevertheless are of the view that the Chancellor's order setting aside the dismissal should not be overturned. We do so upon two considerations: (1) the inherent control that a Court always has over its own decrees before they have become final; and (2) the State is a party to every divorce case, and society as a whole is always vitally interested in the ultimate result.
Courts have legal authority to do all things reasonably necessary for the administration of justice within the scope of their jurisdiction. Keen v. State, 1925, 89 Fla. 113, 103 So. 399. The "inherent power" of Courts of general jurisdiction has to do with the incidents of litigation and the control of the Court's process and procedure. Petition of Florida Bar, Fla. 1953, 61 So.2d 646.
The opening of judgments is a matter of judicial discretion, and in case of reasonable doubt, where there has been no trial on the merits, this discretion is exercised in favor of granting the application so as to permit a determination of the controversy upon the merits. English v. Hecht, supra.
Courts of general jurisdiction have absolute authority over their own orders, decrees and judgments, and can correct or vacate them at any time before they become final. State v. City of Sarasota, 1944, 154 Fla. 250, 17 So.2d 109; State ex rel. Booth v. Byington, Fla.App. 1964, 168 So.2d 164, aff. Fla., 178 So.2d 1; Butler v. Butler, Fla.App. 1965, 172 So.2d 899; Whitaker v. Wright, 1930, 100 Fla. 282, 129 So. 889. This well established rule is for the purpose of enabling the Court to prevent manifest injustices. Lewis v. Jennings, Fla. 1953, 64 So.2d 275. The order appealed in the case sub judice had not become final, and was therefore still under the "inherent control" of the Court to prevent injustice.
Lastly, an action for divorce is not a mere controversy between private parties. Hancock v. Hancock, 1908, 55 Fla. 680, 45 So. 1020, 15 L.R.A.,N.S., 670. The State of Florida, or the general public, is always interested as a silent party in divorce litigation. Schuberth v. Schuberth, Fla. 1951, 52 So.2d 332. In fact, a divorce suit is somewhat of a triangular proceeding in which the husband, the wife, and the State are parties. Gallemore v. Gallemore, 1927, 94 Fla. 516, 114 So. 371; Potter v. Potter, 1931, 101 Fla. 1199, 133 So. 94.
The late Judge Kanner, speaking for this 2nd District Court in Martin v. Martin, Fla.App. 1958, 102 So.2d 837, summed it up very aptly:
"A divorce proceeding runs a threesided course, with avenues of approach from the perspective of the wife, of the husband, and of the state. The state is a party in interest since the public welfare is involved. The perspectives of the wife and of the husband are personal in nature; that of the state has as its focal point the welfare of the public. This objective viewpoint of the state carries the recognition that the distinction between the marriage agreement and other contracts *655 involves a basic sociological institution vital to public weal, since solidarity of the home and family are founded upon sanctity of the marriage vows."
And parenthetically it may be added that 
"Although it is public policy to discourage divorce, and not to favor or encourage it, public policy does not discourage divorce where the relations between husband and wife are such that the legitimate objects of matrimony have been utterly destroyed, and society is not interested in perpetuating a status out of which no good can come and from which harm may result." 27A C.J.S. Divorce § 8, pp. 29-30.
The interlocutory order appealed from is 
Affirmed.
LILES, C.J., and HOBSON, J., concur.