698 So.2d 346 (1997)
Gina Marie HOFFMAN, Appellant,
v.
Dr. Brian W. BOYD, Appellee.
No. 96-2608.
District Court of Appeal of Florida, Fourth District.
August 20, 1997.
*347 Bruce H. Little of Bruce H. Little, P.A., Fort Lauderdale, for appellant.
Dale R. Sanders of Lyons and Sanders, Chartered, Fort Lauderdale, and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellee.
PARIENTE, Judge.
Two persons, married to others, entered into a written contract whereby the man agreed that if he did not marry the woman within a specified time, he would support her indefinitely. We affirm the trial court's dismissal with prejudice based on its determination that the contract is void, and thus unenforceable in the courts of this state.
Appellant, Gina Marie Hoffman (Hoffman), sued appellee, Dr. Brian W. Boyd (Boyd), alleging that by failing to support her indefinitely and failing to marry her, Boyd breached their written agreement. According to Hoffman's complaint, the relationship commenced in 1992 at her place of employment. During the first year, they saw each other on a daily basis. By 1993 Boyd began giving Hoffman money. He told Hoffman that he loved her and wanted to marry her as soon as possible. Boyd further represented to Hoffman that he and his wife planned to separate and then to divorce.
After a period of time elapsed and Boyd's marital situation remained unchanged, Hoffman began to doubt Boyd's intentions. As a result, Boyd offered to put his promises in writing. The parties consulted with an attorney who drafted an initial agreement, which both parties signed. This agreement obligated *348 Boyd to pay Hoffman's monthly expenses for rent, electricity, telephone and food.
After signing the agreement, Boyd failed to take any further steps toward fulfilling his promise to marry. When Hoffman confronted Boyd about his inaction, he agreed to modify the agreement. The resulting amended agreement specified that Boyd would marry Hoffman within twelve months, or in the alternative, support her indefinitely. Provision six of the amended agreement provided that:
The parties acknowledge that in order to pursue this relationship with the promise of marriage, GINA HOFFMAN, is giving up her job at the request of DR. BOYD and is leaving a secure house and marriage.
Boyd and Hoffman thereafter rented an apartment together. Hoffman moved in, while waiting for Boyd and his wife to separate and for Boyd to move in with her. Boyd did not fulfill his promise to marry Hoffman, and after paying Hoffman a total of $13,000, stopped making support payments, thereby precipitating this action for breach of contract.
By their express terms, the written contracts attached to the complaint clearly fit within the legislative prohibition of sections 771.01 and 771.04, Florida Statutes (1995). These sections abolish any cause of action for breach of a promise to marry. Section 771.01 provides:
The rights of action heretofore existing to recover sums of money as damage for alienation of affections, criminal conversation, seduction or breach of contract to marry are hereby abolished.
Section 771.04 solely addresses contracts to marry:
No contract to marry hereafter made or entered into in this state shall operate to give rise, either within or without this state, to any cause or right of action for the breach thereof.
Section 771.06 renders all contracts and instruments in payment or settlement of any abolished cause of action "contrary to the public policy of this state and absolutely void." Any person, either as a party or attorney, who commences any proceeding seeking to enforce contract to marry is guilty of a misdemeanor of the second degree. See §§ 771.06; 771.07.
Section 771.08 provides that Chapter 771 "shall be liberally construed to effectuate the objects and purposes thereof and the public policy of the state." There is no question that Chapter 771 enunciates our state's clearly-stated public policy against contracts to marry. In enacting this statute in 1945, the Florida legislature determined that "the best interests of the people of Florida [would] be served by the abolition of such remedies." Rotwein v. Gersten, 160 Fla. 736, 36 So.2d 419, 420 (1948). This statute has remained the law of this state for over 50 years. In a "democratic society, the legislature is the policy making authority and the courts are expected to heed a declaration like this unless clearly shown to have been promulgated without power to do so." Id. at 421.
Even prior to the enactment of Chapter 771, it had "long been the rule in a majority of the courts of this country and in this State that contracts intended to facilitate or promote the procurement of a divorce will be declared illegal as contrary to public policy." Posner v. Posner, 233 So.2d 381, 382 (Fla.1970) (citing Allen v. Allen, 111 Fla. 733, 150 So. 237 (1933) and Gallemore v. Gallemore, 94 Fla. 516, 114 So. 371 (1927)). Thus, this contract is also violative of the longstanding public policy of this state because it promotes divorce. Not only were both parties married to others, but the agreement specifically stated that Hoffman was giving up her job at the request of Boyd and "leaving a secure home and marriage."
Although, as Hoffman argues, the right to contract is constitutionally protected, our supreme court has explained that "we must recognize that there is a vast difference between a contract made in the market place and one relating to the institution of marriage." Posner, 233 So.2d at 382. In upholding the constitutionality of Chapter 771, our supreme court in Rotwein explained that "while marriage is a contract, it is not such a contract as is protected from impairment by the State and Federal constitutions." 36 *349 So.2d at 421. Although much has changed in this society since the enactment of this statute in 1945, "the concept of marriage as a social institution that is the foundation of the family and of society remains unchanged." Posner, 233 So.2d at 382.
The fact that Boyd may have acted dishonorably does not prevent him from asserting the illegality of the very contract he freely and voluntarily entered into:
Agreements in violation of public policy are void because they have no legal sanction and establish no legitimate bond between the parties. Because of this the defendant may assert the invalidity of the contract even though he is a participator in the wrong.
Local No. 234 of United Ass'n of Journeymen and Apprentices v. Henley & Beckwith, Inc., 66 So.2d 818, 823 (Fla.1953).
Hoffman argues that the contract is valid because there is lawful consideration separate and apart from any express or implied agreement regarding sexual relations. Even if this were the case, the support that Hoffman seeks is not based on an exchange independent of the promise to marry. In fact, the agreement to support Hoffman was contingent on Boyd not making good on his promise to marry. Cf. Poe v. Estate of Levy, 411 So.2d 253 (Fla. 4th DCA 1982); Posik v. Layton, 695 So.2d 759 (Fla. 5th DCA 1997).
Where the cause of action alleged has been abolished by statute, dismissal of the complaint with prejudice is proper. See Liappas v. Augoustis, 47 So.2d 582 (Fla. 1950). To allow amendment would be futile because the complaint, based on the written contract to marry, cannot be amended to state a cause of action. See Hansen v. Central Adjustment Bureau, Inc., 348 So.2d 608 (Fla. 4th DCA 1977). The plain language of the written contracts attached as an exhibit to the complaint would control over any contrary allegations in any subsequent amended complaint. See Warren v. Dairyland Ins. Co., 662 So.2d 1387, 1388 (Fla. 4th DCA 1995) and cases cited therein.
The trial court properly granted the dismissal with prejudice because the contract on its face is unequivocally and unabashedly a contract to marry, prohibited by statute, as well as a contract that promotes divorce. It is thus an illegal contract that is both void and unenforceable in a court of law.
AFFIRMED.
WARNER and POLEN, JJ., concur.